**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MARIA HERRERA** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 11 C 8593** |
| | ) | |
| **v.** | ) | **Magistrate Judge Morton Denlow** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Maria Herrera ("Claimant") brings this action under 42 U.S.C. §405(g), seeking reversal or remand of the decision by Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") by finding Claimant not disabled. Claimant raises the following issues in support of her motion: (1) whether the ALJ met the narrative discussion requirements set forth in SSR 96-8p in determining Claimant's Residual Functional Capacity ("RFC"); (2) whether the ALJ ignored evidence favorable to Claimant when determining her RFC; (3) whether the ALJ improperly determined Claimant's RFC before evaluating her credibility; and (4) whether the ALJ properly evaluated Claimant's allegations of pain. For the following reasons, the Court denies Claimant's motion to reverse the decision of the Commissioner and grants the Commissioner's motion to affirm the Commissioner's decision.

# I. BACKGROUND FACTS

## A.    Procedural History

Claimant filed applications for DIB and SSI on April 2, 2008. R. 78-86.  Claimant alleges a disability onset date of March 1, 2007.  *Id.*  The Social Security Administration ("SSA") originally denied Claimant's applications on June 26, 2008 and again upon reconsideration on August 20, 2008.  R. 51-54.  Shortly thereafter, Claimant requested a hearing before an ALJ.  R. 60.

On May 3, 2012, Administrative Law Judge Arthur S. Cahn ("ALJ") presided over a video hearing.  R. 28-50.  Claimant appeared in Chicago with her attorney Barbara Rodecki, and the ALJ presided over the hearing from Sacramento, CA.  R. 28.  Claimant testified at the hearing with the assistance of an interpreter.  R. 44-50.  On July 19, 2010, the ALJ rendered a decision finding Claimant not disabled under the Social Security Act. R. 28-38.  Specifically, the ALJ concluded that Claimant was capable of performing the full range of medium work, including her past relevant work. R. 31, 36.

Claimant then filed for review of the ALJ's decision to the Appeals Council on September 9, 2010.  R. 19.  On September 30, 2011 the Appeals Council denied the request for review, making the ALJ's decision the final decision of the Commissioner.  R. 1-3.  Claimant subsequently filed this action for review pursuant to 42 U.S.C. § 405(g).  Oral argument before this Court was held on September 12, 2012.  The parties consented to the jurisdiction of this Court pursuant to 28 U.S.C. § 636(c).  Dkt. 6.

**B.      Hearing Testimony and Claimed Limitations of Claimant Maria Herrera.**

At the time of the hearing, Claimant was fifty-one years old. R. 45. Claimant completed the eighth grade. *Id.* She is able to understand "very little" spoken English. *Id.* She is married with three children. *Id.* Claimant's most recent employment as a cook/dishwasher in a nursing home lasted for about five years and ended on February 28, 2007. R. 122. She worked an average of eight hours per day, five days per week. *Id.* She stopped working because of pain and discomfort. R. 46.

Claimant testified that she is not able to do housework. *Id.* During the day she frequently has to rest and is unable to remain in one position (either resting or standing) for a long time. *Id.* Her doctor prescribed physical therapy, and after two sessions the therapist informed her that the therapy would not alleviate her pain. *Id.* Claimant explained that she is taking medication, but that it hurts her stomach and makes her unable to sleep. R. 47. Claimant also has trouble sleeping because of back pain. *Id.* The severity of the pain varies; at the time of the hearing, Claimant felt "pretty bad" "pretty much like every day."

Claimant testified that she is only able to walk in reasonable comfort for fifteen minutes before the pain becomes unbearable, and that she is only able to stand in reasonable comfort for twenty minutes. R. 47-48. She can lift and carry six or seven pounds. R. 48. Claimant stated that her doctor mentioned that he may want to perform surgery but later instructed her to wait for an undefined period of time. *Id.*

In a Social Security Function Report which was completed on April 16, 2008,

Claimant indicated that she was able to perform the following chores at home: make simple meals (often frozen food), wash dishes, clean a little, go to the grocery store, feed her pets, do laundry, and clean the table. R. 106-09. She stated that she was able to drive a car, read, watch television, and sit and converse with friends every other day. R. 110. Claimant noted that she only leaves the house two or three times a week for about half an hour each time. R. 109. Claimant stated that she is able to lift only small objects. R. 111. She can stand for a limited time, bend for no longer than two minutes, and walk two blocks without resting; she needs to rest for 15-20 minutes before she resumes walking. *Id.* In addition, Claimant noted that she gets very strong, painful headaches when she feels stress. R. 112.

In a Physical Impairments Questionnaire that Claimant completed on the same day, she indicated that she is able to sit for two hours without having to stand or walk. R. 116. Claimant described having to lie down three or four times a day for twenty to thirty minutes. *Id.* In the Disability Report related to her appeal, Claimant indicated that she had difficulty getting up in the morning because of her back pain and that she is unable to stay sitting down or standing up. R. 143.

## C. Medical Evidence

### 1. Dr. Arthur E. Jimenez, M.D. – Claimant's Treating Physician

Claimant sought treatment from Dr. Arthur E. Jimenez, M.D. ("Dr. A. Jimenez") from February 2007 through September 2007. Claimant complained of low back pain, a "sleeping" leg, general discomfort, and difficulty sleeping. R. 165-72. X-rays in February and March of 2007 revealed some deformity in the curvature of the spine and some degeneration of cartilage, degenerative arthritic changes in the cervical spine, and possible muscle spasms. R. 189, 192-94.

### 2. Dr. Purnima Thakran, M.D. Ph.D. - Neurologist

Due to Claimant's continuing complaints of lower back pain, numbness, swelling, and difficulty sleeping, Dr. A. Jimenez referred her to Dr. Purnima Thakran, M.D., Ph.D ("Dr. Thakran"). On July 12, 2007, Claimant visited Dr. Thakran, and on August 9, 2007, Dr. Thakran conducted an EMG and nerve study. R. 174-77. Dr. Thakran determined that Claimant had moderate bilateral lumbar paraspinal tenderness, radicular pain in the right lower limb, and a medical history of dyslipidemia. R. 177. Dr. Thakran opined that Claimant might have lumbar radiculopathy. R. 179.

### 3. Cavero Medical Group – Examining Physicians

Notes from the Cavero Medical Group ("CMG") begin around October 2007 and continue through January 9, 2009. R. 195-221; R. 242-70. Treatment notes detail Claimant's

complaints and symptoms of back pain, leg pain, depression, and high cholesterol. R. 242-57.

MRIs in February 2008 indicate that Claimant had broad based left neural foraminal/lateral protrusion at L3-L4, broad based left lateral disc protrusion at L4-L5, and diffuse osteoarthritic changes and disc disease. R. 270. On May 22, 2008, Claimant returned to CMG for dizziness and back pain and was assessed with benign positional vertigo and upper back pain. R. 250.

On November 10, 2008, Dr. Cavero saw Claimant for her lower back pain and prescribed a course of physical therapy—two sessions a week for three weeks. R. 241. After two visits, the therapist determined that therapy would not help Claimant and instructed her to return to Dr. Cavero. R. 260.

On December 18, 2008, physicians at CMG examined Claimant's spinal x-rays and determined that she had minimal degenerative changes in the lumbar spine and in the thoracic spine with mild degenerative changes in the cervical spine. R. 258-259. On December 27, 2008, Claimant was assessed with straightening of the normal cervical lordotic curve, moderate osteophyte formation at the C6-C7 level, and mild osseous neural foraminal stenosis at the C3-C4 level on the right. R. 258. Dr. Cavero's final impression was that Claimant had mild degenerative changes and a history of diffuse pain, but no acute fractures or dislocations. *Id.*

From April 2009 through March 9, 2010, Claimant presented at CMG for various tests and treatments and completion of paperwork. Records indicate she complained of intense pain in April 2009. R. 285. On June 23, 2009 CMG physicians diagnosed degenerative joint disease, post-menopausal symptoms, depression, and tension headaches and was prescribed various medications. R. 283. On November 3, 2009, Claimant was diagnosed with lumbar pain and cervical pain and prescribed more medications. R. 281. On March 9, 2010, notes indicate that Claimant was "doing well." R. 280.

### 4. Dr. Barry Fischer, M.D. – State Agency Consultative Physician

On May 13, 2008 Dr. Barry Fischer, M.D. ("Dr. Fischer") conducted a 35-minute examination of Claimant with Claimant's daughter acting as interpreter. R. 222. Dr. Fischer noted that Claimant had pain, soreness and stiffness in the lower back with some numbness in the right leg. R. 223. He concluded that she could walk for more than three blocks unassisted. *Id.* Dr. Fischer's diagnostic impression was that Claimant had: a history of low back pain with right radicular symptomatology; evidence of polyneuropathy from the EMG; and a history of elevated cholesterol. R. 225. He observed that Claimant had no difficulty undergoing the various physical tests administered, such as walking on toes, squatting, and hopping. *Id.* Dr. Fischer concluded that Claimant was able to sit, stand, walk, lift, carry, handle objects, hear and speak without limitation. *Id.*

### 5.     Dr. Frank Jimenez, M.D. - State Agency Review Physician

On June 23, 2008, Dr. Frank Jimenez ("Dr. F. Jimenez") completed an RFC Assessment and determined that Claimant could: occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk for about 6 hours in an 8-hour workday; sit for about 6 hours in an 8-hour workday; and push and/or pull unlimited amounts of weight. R. 231. Dr. F. Jimenez reviewed the medical evidence, specifically noting Claimant's full range of motion in all joints and spine. *Id.* He indicated in his evaluation that there were no treating or examining source statements in the file. R. 236. On August 12, 2008, Dr. Charles Wabner, M.D. ("Dr. Wabner") reviewed and affirmed Dr. F. Jimenez's June 23, 2008 RFC assessment. Dr. Wabner noted that at the reconsideration level sources were contacted and no medical records received showed changes. Dr. Wabner acknowledged Claimant's allegation that her pain worsened in April 2008 but noted that this was before Dr. Fischer's consultative exam. R. 240. Dr. Wabner affirmed the finding that Claimant had the ability to perform medium work. *Id.*

### 6.     Dr. Susan J. Sicotte, M.D. – Examining Physician

Dr. Susan J. Sicotte, M.D. ("Dr. Sicotte") examined Claimant on August 14, 2008 upon referral of Dr. Cavero. R. 264. Dr. Sicotte conducted a series of physical tests and diagnosed mild sensory axonal neuropathy affecting the bilateral lower extremities (possibly consistent with borderline diabetes) and probable chronic left L4-L5 radiculopathy without evidence of ongoing active denervation. R. 264. Dr. Sicotte found no evidence of an *active*

denervating process in the results. R. 265. She raised the possibility that Claimant may have restless leg syndrome or arthritis and advised clinical correction. *Id.*

### D.     The ALJ's Decision

Following a hearing and review of the medical evidence, the ALJ rendered a decision unfavorable to Claimant on July 19, 2010. R. 28-38. The ALJ found that Claimant was not under a disability as defined in the Social Security Act and upheld the denial of DIB and SSI. R. 37-38.

The ALJ evaluated Claimant's application under the required five-step sequential analysis. At step one, the ALJ found Claimant has not engaged in substantial gainful activity since March 1, 2007, the alleged onset date. R. 30. At step two, the ALJ determined that Claimant has the following severe impairments: degenerative disc disease; broad-based left neural foraminal/lateral protrusion at L3-L4, a left lateral disc protrusion at L4-L5 and diffuse osteoarthritic changes and the non-severe impairment of depression. *Id.* At step three, the ALJ found that Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R Pt. 404, Subpt. P, App. 1. R. 31. The ALJ determined that Claimant had the residual functional capacity to perform the full range of medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c).[1] R. 31.

---

[1] 20 C.F.R. 404.1567 contains the following definition of medium work: "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."

In assessing Claimant's credibility, the ALJ found that although Claimant's medically determinable impairments "could reasonably be expected to cause the alleged symptoms…the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." R. 36. The ALJ gave "significant weight" to the DDS State Agency medical consultants in their findings that Claimant could perform medium work. *Id*. He noted the lack of any opinions from Claimant's treating physicians that she is precluded from work activities. R. 36.

At step four, the ALJ found that Claimant capable of performing her past relevant work as a kitchen aide/cook/dishwasher is not precluded by her RFC. The ALJ also found that there are other jobs in the national economy which Claimant could perform. R. 37. Thus, the ALJ concluded that Claimant is not disabled within the definition of the Social Security Act. R. 37-38.

## II. LEGAL STANDARDS

### A.    Standard of Review

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A decision by an ALJ becomes the Commission's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id*. The reviewing court may enter judgment "affirming,

modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Id.*; *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when the record contains adequate evidence to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or an adequate discussion of the issues, it must be remanded. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether substantial evidence supports the findings. *Id.*

## B.    Disability Standard

Disability insurance benefits are available to a claimant who can establish he is under a "disability" as defined by the Social Security Act. *Liskowitz v. Astrue*, 559 F.3d 736,

739-40 (7th Cir. 2009). "Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is under a disability if he is unable to perform his previous work and cannot, considering his age, education, and work experience, partake in any gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Gainful employment is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

A five-step sequential analysis is utilized in evaluating whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The ALJ must inquire, in the following order: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing other work. *Id*. Once the claimant has proven he cannot continue his past relevant work due to physical limitations, the ALJ must determine whether other jobs exist in the economy that the claimant can perform. *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008).

### III. DISCUSSION

Claimant raises the following issues: (1) whether the ALJ met the narrative discussion requirements set forth in SSR 96-8p in determining Claimant's Residual Functional Capacity

12

("RFC"); (2) whether the ALJ ignored evidence favorable to Claimant when determining her RFC; (3) whether the ALJ improperly determined Claimant's RFC before evaluating her credibility; and (4) whether the ALJ properly evaluated Claimant's allegations of pain. The Court addresses the RFC and credibility determinations in turn.

**A.    Substantial Evidence Supports the ALJ's RFC Determination and the ALJ Met the Narrative Discussion Requirements of SSR 96-8p.**

**1.    The ALJ sufficiently articulated how he determined Claimant's RFC.**

The RFC is the maximum that a claimant can still do despite her mental and physical limitations. *Craft*, 539 F.3d at 676-77. Social Security Ruling 96-8p requires that an RFC assessment must include a narrative discussion describing "how the evidence supports each conclusion, citing specific medical facts…and nonmedical evidence." SSR 96-8p, 1996 SSR LEXIS 5 at *18-19. Specifically, the ALJ must discuss the individual's ability to "perform sustained work activities in an ordinary work setting on a regular and continuing basis…and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." *Id*. The ALJ should determine a claimant's RFC after evaluating the medical opinion evidence as well as other evidence, including the claimant's testimony. *Craft*, 539 F.3d at 676.

However, an ALJ is not required to provide an item-by-item or function-by-function analysis of the claimant's RFC. *Amey v. Astrue*, No. 09 C 2712, 2012 U.S. Dist. LEXIS 12962, at *36-37 (N.D. Ill. Feb. 2, 2012). SSR 96-8p requires the ALJ to "consider, not articulate" a claimant's RFC on a function-by-function basis. *Corder v. Barnhart*, No. 03

C 9308, 2004 U.S. Dist. LEXIS 8285, at *16 (N.D. Ill. May 3, 2004). The ALJ is not required to address every piece of evidence or testimony in the record, but an ALJ's analysis "must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).

Claimant argues that the ALJ did not cite any medical evidence supporting his conclusion that she was able to sustain a medium level of work. The Court finds that the ALJ provided a detailed account of the medical evidence in the record and demonstrated attentiveness to all facts and opinions therein. R. 31-35. Contrary to Claimant's argument, the ALJ specifically noted that the record does not include opinions from a treating source and therefore gave significant weight to the DDS State Agency medical consultants in their findings that Claimant can perform medium level exertional work. R. 36. The ALJ explained that he did so because the record showed conservative treatment, a lack of objective medical findings of further limitations, and a full range of daily activities. *Id.* The state agency opinions are medical evidence supporting the conclusion that Claimant can perform medium work and Claimant does not challenge the ALJ's decision to give them substantial weight.

Specifically, the RFC completed by Dr. F. Jimenez concludes that Claimant can perform the tasks of medium work and is medical evidence that Claimant can perform medium work. R. 230-37. On May 13, 2008, Dr. Fischer reviewed the medical evidence, examined Claimant and ultimately determined that she was capable of sitting, standing,

walking, lifting, carrying, handling objects, hearing and speaking without limitation. R. 225. The two state agency reports are the only documents in the record that offer objective assessments of Claimant's ability to perform sustained work activities. Where the record does not contain an opinion from a treating source, the ALJ is entitled to give significant weight to a state agency doctor if other evidence supports that opinion. *See Sanders v. Astrue*, No. 11 C 7625, 2012 U.S. Dist. LEXIS 98134, at \*25 (N.D. Ill. July 16, 2012). The ALJ found that other evidence supports the state agency doctors' opinions, and the Court finds substantial evidence in support of that determination.

The ALJ also explicitly considered the treatment notes from Claimant's treating physicians, specifically Dr. A. Jimenez and the doctors at CMG. Those doctors noted Claimant's subjective complaints of pain and produced evidence of various abnormalities in her x-rays, but in the ALJ's judgment, they did not provide medical evidence to support the degree of pain she alleged. *Huerta v. Astrue*, No. 2:09-CV-001-PRC, 2009 U.S. Dist. LEXIS 108306, at \*22 (N.D. Ind. Nov. 19, 2009) (affirming an ALJ's finding that the claimant's allegations of severe back and leg pain were inconsistent with the "relatively unremarkable" findings of several physicians and where consulting physicians found the claimant capable of performing a range of physical tasks). The evidence from the treating physicians give diagnoses but do not provide assessments of Claimant's limitations.

The ALJ sufficiently articulated how he reached the RFC. He reviewed and evaluated the relevant medical evidence, gave substantial weight to medical opinion evidence finding

that Claimant could perform medium exertion level work, and appropriately evaluated Claimant's credibility (which the Court addresses below). R. 36. The ALJ noted that none of Claimant's treating physicians opined that Claimant could not perform full-time work. *Id*.

**2. The ALJ considered both favorable and unfavorable evidence in evaluating Claimant's RFC.**

Claimant argues that the ALJ did not consider evidence in the record that was favorable to her claim of disability. The Court disagrees. As noted, an ALJ is not required to consider every piece of evidence in the record. *Zurawski* 245 F.3d at 888. However, an ALJ may not ignore evidence that is favorable to a claimant simply because the evidence contradicts his finding. *Id.*

Claimant argues that the ALJ did not consider medical developments that occurred after Claimant's consultative visit with Dr. Fischer. To the contrary, the ALJ's decision references Claimant's statements about her limitations, including her inability to squat and kneel, her inability to perform certain everyday chores, her ability to stand and bend for only a short time, her pain, and her sleep disturbances. R. 32. The ALJ acknowledged Claimant's medically determinable impairments. R. 36. The ALJ describes in detail Claimant's post-Dr. Fischer records, including her May 22, 2008 visit to CMG, her evaluation by Dr. Sicotte, her physical therapy appointments, and her 2009 visits to CMG. R. 34-35. He pointed out both positive and negative developments in Claimant's medical situation in 2009 and 2010. R. 35. The ALJ also cited Claimant's allegations of continuing pain after Dr. Fischer's exam,

16

but he determined that ultimately the medical records do not support a fully disabling condition. R. 35-36.

Claimant also argues that the ALJ did not sufficiently account for her need to lie down during the day or the fatigue she experiences as a result of poor sleep during the night. Claimant testified that she has to rest during the day "every once in awhile." R. 46. She testified that her medicine makes sleep difficult. R. 47. Unlike the cases cited by Claimant on this point, the ALJ did not ignore significant evidence that casts doubt on the accuracy of the entire RFC. *Compare Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009) (where the ALJ rejected a claimant's claims of fatigue and hand limitations only by saying that no objective medical evidence supported those allegations). The ALJ in the case at bar found that Claimant's complaints about side effects of her medication, including sleep disturbance, were inconsistent with her own statements in disability forms. R. 36.

Ultimately, the ALJ formulated the RFC by considering both Claimant's subjective testimony and the medical evidence in the record. The ALJ relied on medical opinions of record, considered favorable and unfavorable evidence, and sufficiently articulated how he reached the RFC.

### B. The ALJ's Credibility Determination Was Not Patently Wrong.

When a Claimant alleges subjective pain symptoms, an ALJ must evaluate her credibility. SSR 96-7p, 1996 WL 374186, at *1, *3. In reviewing credibility assessments,

"[b]ecause the ALJ is in the best position to determine the credibility of the witness, the Court reviews that determination deferentially, and will overturn a credibility determination only if it is patently wrong." *Craft*, 539 F.3d at 678 (quotations omitted). As the fact-finder, the ALJ is afforded "special deference" with respect to credibility findings. *Castille v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010).

To determine whether a credibility determination is "patently wrong," the Court examines whether the ALJ's determination was reasoned and supported. *Jens v. Barnhart*, 347 F.3d 209, 213-14 (7th Cir. 2003). The ALJ need only "minimally articulate his or her justification for rejecting or accepting specific evidence of disability." *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). The fact that Claimant's pain allegations or other symptoms are not supported by medical evidence is, alone, insufficient to discredit her testimony. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) ("[T]he ALJ may not discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it."); *Carradine*, 360 F.3d at 753.

However, an ALJ is not prohibited from considering the lack of objective evidence in discounting a claimant's subjective complaints. *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) ("But *Carradine* does not imply that an ALJ can *never* consider the lack of objective evidence in rejecting a claimant's subjective complaints.") (emphasis in original). "Applicants for disability benefits have an incentive to exaggerate their symptoms, and an administrative law judge is free to discount the applicant's testimony on the basis of other

evidence in the case." *Johnson v. Barnhart*, 449 F.3d 804 (7th Cir. 2006). A discrepancy between the reported pain and the medical evidence is probative that a witness may be exaggerating her condition. *Powers v. Apfel*, 207 F.3d 431, 435-36 (7th Cir. 2000).

Relevant factors in a credibility assessment include: objective medical evidence; a claimant's own statements about symptoms; statements and other information provided by treating or examining physicians; activities of daily living; location, duration, frequency, and intensity of pain and other symptoms; precipitating and aggravating factors; medications; treatment and other measures taken to relieve pain; observations by agency employees; and conflicts between a claimant's statements and other evidence. *See* 20 C.F.R. § 404.1529(c); SSR 96-7p, 1996 WL 374186, at *1, *3.

Initially, the Court does not find the ALJ's use of the boilerplate language criticized by the Seventh Circuit to be reversible error. After using the boilerplate, the ALJ proceeded to conduct a detailed credibility analysis as part of his explanation for how he reached the RFC. R. 36.

After using the boilerplate language, the ALJ explicitly relied on many of the regulatory factors to determine Claimant's credibility. He considered the regulatory factor of Claimant's own statements about symptoms. R. 36. He considered the regulatory factor of objective medical evidence. *Id.* He considered the regulatory factor of daily living. *Id.* He considered the regulatory factor of Claimant's relatively conservative treatment. *Id.* He considered the regulatory factor of observations by agency employees. *Id.* Finally, the ALJ

considered the regulatory factor of conflicts between a claimant's statements and other evidence. *Id.* For example, the ALJ noted that she testified about side effects from medication despite indicating on her SSA forms that she does not experience side effects. *Id.* The ALJ relied on all of these factors together to find Claimant's testimony not entirely credible and the Court finds that this conclusion is not patently wrong.

Claimant argues that if the ALJ had properly evaluated her credibility, he would not have placed as much weight on the state agency doctors because Claimant's testimony undermined the conclusions in those reports. In *Scott v. Astrue*, cited by Claimant on this point, the Seventh Circuit first found that the ALJ erred in discounting the opinion of a treating source in favor of a state agency doctor and then that the claimant produced both testimony as well as objective medical evidence of a particular impairment. *Scott v. Astrue*, 647 F.3d 734, 741 (7th Cir. 2011). In the case at bar, Claimant has not produced objective medical evidence of her impairments that support the extent of limitations she claims; rather she has cited to diagnoses that *can* cause limitations. Where the ALJ considers all of the regulatory factors and finds a Claimant not entirely credible, the Court may not overturn that decision unless it is patently wrong. In the case at bar, it is not.

The ALJ noted a conservative treatment record, that agency field office personnel did not observe difficulties with Claimant's ability to stand, walk and/or sit, and that Claimant's daily activities (cooking, doing dishes, cleaning the house a little, doing laundry, going to the grocery store, driving a car, etc.) cast doubt on her subjective allegations. R. 36-37, 117-19,

127-29.  The ALJ also found inconsistencies in Claimant's testimony.  R. 36.  The ALJ's

credibility determination has support in the record, he relied on the regulatory factors, and

the Court does not find it to be patently wrong.

## IV. CONCLUSION

**For the reasons set forth in this opinion, the Court denies Claimant's motion to
reverse and remand the decision of the Commissioner of Social Security and grants the
Commissioner's motion to affirm the Commissioner's decision.**

**SO ORDERED THIS 19th DAY OF SEPTEMBER 2012.**

_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

Barry A. Schultz
The Office of Barry A. Schultz, P.C.
1601 Sherman Avenue
Suite 510
Evanston, Illinois 60201

**Counsel for Plaintiff**

Jonathan C. Haile
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604

Charles R. Goldstein
Special Assistant United States Attorney
Office of the General Counsel
200 West Adams Street
Suite 3000
Chicago, Illinois 60606

**Counsel for Defendant**